W. J. BENNETT, Appellee, v. THEODORE KROGER et al., Appellants.

**VENDOR AND PURCHASER: Right of Possession and Rents.** A purchaser who contracts for possession of lands on a specified date, with right thenceforth to receive accruing rents, but also contracts that, on said date, he will, on penalty of forfeiture, make payment, and thereupon receive deeds from the vendor (time being the essence of the contract), is, nevertheless, not entitled to such possession or rents *if he wholly fails to make said payment.* And a subsequent decree that the delinquent payment may yet be made within a stated time, which is not complied with, places said purchaser in no better position.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

NOVEMBER 15, 1921.

ACTION brought by appellee, W. J. Bennett, to recover rent from appellant Theodore Kroger, tenant, during the year 1920, on certain land. The real controversy, however, is between appellee, Bennett, the owner of the land, and appellant J. P. Marx, intervener, who had contracted for purchase of the land, and claims that he was entitled to possession of the land, under such contract, during the rental period, and entitled to receive the rent. There was a judgment for plaintiff, and tenant and intervener appeal.—*Affirmed.*

*T. M. Zink,* for appellants.

*Molyneux, Maher & Meloy,* for appellee.

ARTHUR, J.—In substance, plaintiff states in his petition that he is the owner of the west half of Section 22, Township 96, Range 39, O'Brien County, and that defendant, Kroger, is the tenant occupying the premises, under lease providing for the payment of $12 per acre cash for all land not in crop, and for the delivery of one half of all grain grown, free of charge, to the market, as rental for said premises.

Defendant, Kroger, admitted he occupied the premises, but denied he was plaintiff's tenant.

It was stipulated by the parties that:

"Defendant, Kroger, is liable for all the rent specified in said written lease, and the only question to be determined by the court is whether the plaintiff or the intervener is entitled thereto, and that judgment for the amount thereof shall be entered against the defendant and in favor of the party eventually found to be entitled thereto, as between the plaintiff and intervener."

Appellant J. P. Marx intervened in the action, and in his petition stated, in substance, that, on or about the 24th day of April, 1919, he and Roy H. King entered into a written agreement, by the terms of which King sold to intervener, Marx, the half section of land occupied by Kroger as tenant, and another half section; that, under the terms of his written agreement with King, he took possession of the west half of Section 22,

on March 1, 1920; that he leased the west half of Section 22 to Theodore Kroger, appellant, by written lease, for one year from March 1, 1920, at $12 per acre for all land not in crop, and one half of all crops delivered at market; that Kroger, under this lease, entered into the possession of the land, and farmed it thereunder during 1920.

Intervener also averred that, on March 20, 1920, King served a written notice of forfeiture of the contract, and that, on July 9, 1920, intervener brought an action against King for the specific performance of the contract, in which action decree was rendered on November 15, 1920, and set out the decree as part of his petition. Intervener also set out the contract and the notice of forfeiture and tender between him and King, and the lease by him to Kroger, as part of his petition.

Plaintiff demurred to the petition of intervention on the grounds that intervener never had possession or authority to lease the land to Kroger; that the contract involved was never performed by intervener, and that intervener has acquired no right or interest in the premises; that the rights of intervener have been determined and adjudicated. The demurrer was sustained. Intervener elected to stand on his petition, and judgment was rendered against him for costs of intervention. Intervener appeals from the ruling sustaining plaintiff's demurrer to his petition of intervention.

The trial was had on the issues between the plaintiff, Bennett, and the defendant Kroger, and judgment rendered against the defendant for the rent, from which judgment Kroger appeals.

It is conceded that appellee, Bennett, is the owner of the half section of land occupied by the tenant (appellant), Kroger. It is conceded that appellant Marx failed to perform his contract of purchase with King. It is not specifically stated in the petition of intervention, or anywhere in the record, that King held a contract of purchase of the land from Bennett, but we assume that he did; for the petition alleges that Bennett made out a deed to Marx, and delivered the deed to King. The deed was never delivered to Marx, because Marx did not perform the contract.

It is argued by counsel for appellants that the decree en-

tered in the cause of Marx v. King, alleged in the petition of intervention for specific performance of the contract, adjudicated that the contract was in force at that time, November 15, 1920. In that action, Marx made a written tender and offer to perform, and the court found that the tender did not comply with the terms of the contract; but that, as Marx had paid $13,000 to King, at the time of making the contract, and "inasmuch as a dispute arose between the parties as to the terms and conditions of the contract, in equity and good conscience forfeiture of the contract ought not to be declared." And it was decreed that, if Marx should pay $17,600 in cash, with 6 per cent interest thereon from March 1, 1920, and comply with the other terms of the contract, "then forfeiture of the contract will not be declared. But if the plaintiff shall fail to perform his contract in accordance with the terms and conditions of this decree, within thirty days, the plaintiff's petition will be dismissed." The terms of the decree were not performed.

We think counsel's position that the decree in Marx v. King adjudicated that the contract was then in force is not tenable. The court found, in effect, that Marx had not complied with the contract, but that he would be given 30 days more in which to perform it, because of certain equities, under conditions prescribed; and that, if he did not so perform within the 30 days, his petition to compel performance stood dismissed. If the decree established anything affecting rights involved in the instant case, it seems to us, it was that Marx had not performed his contract, and had not tendered performance in accordance with the terms of the contract; and that his rights in the contract were forfeited, he not having afterwards complied with the decree; and that he had not been entitled to possession of the premises at any time while his part of the contract remained unperformed.

However, we think the right to possession must be determined from the contract, which is pleaded as a part of the petition of intervention, to which the demurrer was directed, and that the right to the rent in controversy depends upon the right to possession. In *Hall v. Hall*, 150 Iowa 277, it is said:

"Rent belongs to the person entitled to the possession of the premises when it becomes due."

Now, did Marx ever have the right of possession of the premises? If he earlier had a right of possession, he certainly had no such right after his rights were forfeited by the decree in Marx v. King. Marx's rights were forfeited by the decree in Marx v. King; for his rights were forfeited if he did not comply with the conditions of the decree, and he did not so comply. The rent would seem to be not due until the end of the rental period, March 1, 1921, no time of payment being mentioned in the lease. The only mention in the lease of rent's becoming due is upon the contingencies that any grain raised on the premises should be removed before the payment of the rent, or if the tenant should attempt to sell grain, or if any of the grain should be claimed by any person,—then the ''rent shall immediately become due and payable.'' It could scarcely be contended that the cash rent would become due until the end of the rental period. Perhaps the grain rent would be due when the grain was harvested and ready for division, and upon demand and direction to the tenant to deliver it to a market place, and not before.

The purchase price was $196,000, and the contract provided for a cash payment of $13,000 at the date of the contract, and $17,600 on March 1, 1920, the assumption of an $80,000 incumbrance resting on the land, assignment of certain mortgages aggregating $23,400, and execution of mortgages back for the balance of $62,000. The $13,000 initial payment was made. No deferred portion of the contract was performed. The contract, by its terms, was to be fully performed on March 1, 1920. The contract provided:

''$17,600 on March 1, 1920, as evidenced by promissory note, at which time first party will furnish warranty deeds to said premises.''

The contract also provided ''that in consideration of the stipulations herein contained and the payments to be made as hereinafter specified, the first party agrees to sell unto the second party'' the 640 acres of land described in the contract. The contract further provided:

''In case said second party, his legal representatives or assigns, shall pay the several sums of money aforesaid punctually, and at the several times above limited and shall strictly

and literally perform all and singular the agreements and stipulations aforesaid, after their tenor and intent, then the first party will make unto the second party, his heirs and assigns (upon request and surrender of this contract) a deed conveying said premises in fee simple, with the ordinary covenants of warranty and furnish an abstract of title to date, showing a clear, merchantable title, except the incumbrance designated herein.

"But in case the second party shall fail to make the payments aforesaid, or any of them, punctually, and upon the strict terms and times above limited, and likewise to perform and complete all and each of the agreements and stipulations aforesaid, strictly and literally, without failure or default, times of payment being of the essence of this contract, then the first party shall have the right to declare this contract null and void and all rights and interests hereby created or then existing in favor of said second party, or derived under this contract, shall utterly cease and determine, and the premises hereby contracted shall revert in said first party (without any declaration of forfeiture or act, or reentry, or without any other act by said first party to be performed, and without any right of said second party for reclamation or compensation for moneys paid or improvements made) absolutely, full and perfectly as if this contract had never been made. If, however, the said first party shall elect not to declare this contract null and void in case the second party shall fail to make payments, or any of them, as above stipulated the second party agrees to pay interest at the rate of eight per cent per annum, payable annually, on all payments of both principal and interest from date of maturity."

Intervener sets out in his petition the contract, and bases thereon his claim to the right of possession on March 1, 1920. The plaintiff, by his demurrer, challenged intervener's right to possession of the premises under the contract. No facts of actual physical possession of the premises, except by the tenant, appear. The question before us must be determined upon the right of possession, and the right of possession must be determined from the contract itself, and the further fact shown in intervener's petition, that Marx did not perform the contract, further than by making the down payment. The contract was

wholly executory as to King, and did not bind him to performance of any part of the contract until Marx had made full performance on his part.    True, the contract does have in it a clause reading:

"Possession to be given second party, March 1, 1920.    The rent from March 1, 1920, to go to him."

March 1, 1920, was the date when the contract was to be fully performed by Marx, and it was then that King was to deliver deeds and give possession, if Marx had then performed his part of the contract, as we think the contract, taken as a whole, must be construed.    For it further appears in the contract, as hereinbefore stated, that Marx was to punctually pay all sums of money specified in the contract; and that it was in case the sums of money were paid when due, and all the agreements of consideration were strictly and literally performed, that King, on request and surrender of the contract, was to perform his part of the contract; and that, in case Marx failed to punctually make his payments and perform the agreements of the contract, the time of payment being the essence of the contract, then King had the right to declare that all rights and interests created by the contract in favor of Marx should utterly cease and determine, as if the contract had never been made.

Counsel for appellant seems to assume that the above quoted clause as to possession is controlling, and precludes further inquiry.    We think such position is not sound.    The right of possession must be determined from the entire contract.    Time was made the essence, and the execution of the deed and delivery of possession of the premises, we think it fair to say, were dependent upon performance by Marx of his part of the contract. Possession was not to be in Marx until he performed his part of the contract, which he never did.    Supporting, see *In re Estate of Boyle*, 154 Iowa 249; *Nunngesser v. Hart*, 122 Iowa 647. Cases cited by appellant's counsel do not hold to the contrary.

In his reply argument, counsel for appellant comments on inconsistent positions taken by appellee, in that he sued for rent which he claimed was then due, and now says that the rent did not become due until March 1, 1921, the end of the rental period. It is an anomaly, but is harmonized or waived by the stipulation above set out.

It is our conclusion that the court below properly sustained the demurrer, and the judgment is, accordingly, affirmed.—*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.